# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| IRINA BALYASNIKOVA, | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | No. 07 C 0290 |
| | ) | Wayne R. Andersen |
| UNIVERSITY OF ILLINOIS AT | ) | District Judge |
| CHICAGO AND THE BOARD OF | ) | |
| TRUSTEES OF THE UNIVERSITY | ) | |
| OF ILLINOIS, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Irina Balyasnikova filed a three-count amended complaint against her former employer, University of Illinois at Chicago ("UIC") and the Board of Trustees of the University of Illinois, alleging gender discrimination under Title VII, 42 U.S.C. § 2000(e) et seq., violation of the Equal Pay Act, 29 U.S.C. § 26 et seq., and breach of the Fair Labor Standards Act ("FLSA"), specifically 29 U.S.C. § 207. Defendant now moves to dismiss Count III of plaintiff's amended complaint for failure to state a claim pursuant to FED.R.CIV.P. 12(b)(6). For the following reasons, the motion is granted.

## BACKGROUND

Balyasnikova's well-pleaded allegations, which the court treats as true and views in a light most favorable to the plaintiff for purposes of this motion, are as follows. Balyasnikova obtained her masters degree in animal and human physiology and her PhD in cell biology in Russia. Defendant is an educational institution that maintains and operates a public university in

Chicago, Illinois. In February, 1997, defendant hired Balyasnikova as a post-doctoral research associate in UIC's department of anesthesiology. From 2000 to 2003, Balyasnikova was employed as an instructor, and from 2003 to May 15, 2007, Balyasnikova was employed as a research assistant professor.

During the course of her work as a research assistant, Balyasnikova performed experiments for about 60 hours per week, and also assisted in writing academic articles. As an instructor, Balyasnikova performed the same experiments and was also required to write and assist in writing academic articles, totaling about 80 to 90 hours per week. In her final position as research assistant professor, Balyasnikova worked 60 to 70 hours per week performing experiments in addition to 20 to 40 hours per week on grants and publications.

Balyasnikova alleges that she worked more hours than her male colleagues and that she was also paid less for performing the same work. Balyasnikova further alleges that she was required to work additional hours that her male colleagues were not required to work, and that she was passed over for a promotion to the position of research associate professor that was given to a male colleague. Additionally, Balyasnikova claims that male colleagues were credited with work that they never performed on her publications, and that her employer made unauthorized changes to grants she had secured from the American Heart Association and American Lung Association in order to compensate her male colleagues.

To support her FLSA claim, Balyasnikova asserts that she worked more than 40 hours per week and that the defendant did not compensate her for these extra hours as required by the FLSA. Balyasnikova filed her initial complaint on January 17, 2007. On May 15, 2007, Balyasnikova filed the instant amended complaint changing Count III from a claim for breach of

contract to a claim for breach of the FLSA.

## DISCUSSION

A motion to dismiss pursuant to FED.R.CIV.P. 12(b)(6) does not test whether the plaintiff will prevail on the merits, but instead whether the claimant has properly stated a claim. *Schuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *See Chaney v. Suburban Bus Div. of Regional Transp. Auth.*, 52 F.3d 623, 626-27 (7th Cir. 1995) (citations omitted). "Dismissal is properly granted if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Cushing v. City of Chicago*, 3 F.3d 1156, 1159 (7th Cir. 1993) (quoting *Hishon v. King and Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)).

In Count III of the amended complaint, Balyasnikova seeks to recover under the FLSA for overtime wages. Balyasnikova alleges that during her employment with the defendant, she worked in excess of 40 hours per week and was not compensated for these hours.

Under the FLSA,

> no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

However, the FLSA also provides an exemption to this rule for employees "employed in a bona fide, executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). While

the FLSA does not define this term, the Secretary of Labor has issued regulations to include "learned professionals" as exempt from this requirement. 29 C.F.R. § 541.301.

The regulations set out a three stage test to determine whether an employee is a learned professional for the purpose of the exemption. "[A]n employee's primary duty must be the performance of work requiring advanced knowledge in a field of science or learning customarily acquired by prolonged course of specialized intellectual instruction. This primary duty test includes three elements:"

> (1) The employee must perform work requiring advanced knowledge;
> (2) The advanced knowledge must be in the field of science or learning, and
> (3) The advanced knowledge must be customarily acquired by a prolonged course of specialized intellection instruction.

29 C.F.R. § 541.301(a).

The question before the court in the motion, therefore, is whether Balyasnikova's primary duty meets the test set out for the learned professional exemption.

### A. **Primary Duty**

Before deciding whether Balyasnikova's primary duty falls within the learned professional exemption, we must first determine Balyasnikova's primary duty. Balyasnikova has alleged that she performed routine experiments and that her job required her to write articles and apply for grants. She claims that because performing experiments was how she spent most of her time, we should find that that was her primary duty. But even if her claim was true–that the majority of her hours were spent performing tasks not within her job description–that fact does not necessarily make those tasks her primary duty. In *Piscione v. Ernst & Young, L.L.P.*, the 7th Circuit held that a consultant and manager of a human resources consulting group met the

4

professional exemption to the FLSA, even though that employee was required to engage in routine work. 171 F.3d 527 (7th Cir. 1999).

Furthermore, while time is a factor in determining whether a given task is the employee's primary duty, it is only one factor that a court may consider. 29 C.F.R. § 541.700(b). Other factors include the relative importance of the exempt duties as compared to other duties, the employee's relative freedom from direct supervision, and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee. Balyasnikova's primary and most important duty was to write articles and apply for and obtain grants because she could not achieve tenure without writing articles and applying for grants. And while Balyasnikova was directly supervised because she was assigned daily tasks and experiments to perform, she was not supervised in performing her primary duty of writing articles and applying for grants. Finally, while Balyasnikova alleges that she was paid less than her male counterparts, she was paid a salary as a faculty member and she does not allege that she was paid at the level of an employee performing nonexempt work. We therefore find that writing articles and applying for grants was Balyasnikova's primary duty, even though she spent a majority of her hours performing so-called routine experiments.

## B. <u>Advanced Knowledge</u>

The first factor we examine for the learned professional exemption is whether the employee performed work requiring advanced knowledge. Balyasnikova admits that she has acquired advanced knowledge in her field by obtaining a masters degree and a PhD. Additionally, writing articles and applying for grants requires advanced knowledge. Without

advanced knowledge, it is unlikely that Balyasnikova would be able to perform experiments, interpret results, and then write up the results in an informed way for publication. Without advanced knowledge, Balyasnikova would have no credibility in the scientific community.

"Work requiring advanced knowledge" is intellectual work that requires the use of discretion and judgment instead of routine or mechanical work. 29 C.F.R. § 541.301(b). Presumably, Balyasnikova had to choose where to apply for grants and where to apply for publication. These tasks required both discretion and judgment in her primary duty. We therefore find that Balyasnikova's work required advanced knowledge.

### C. The field of science or learning

The second factor we examine for the learned professional exemption is whether the employee's advanced knowledge is in the field of science or learning. The field of science or learning "includes the traditional professions of . . .teaching, [and] various types of physical, chemical, and biological sciences, . . .as distinguished from mechanical arts." 29 C.F.R. § 541.301(c). As a research assistant professor, Balyasnikova was involved in the field of teaching, and as a researcher in the field of anesthesiology who performed experiments, Balyasnikova was involved in the field of biological sciences. We therefore find that Balyasnikova's advanced knowledge was in the fields of both science and learning.

### D. Prolonged course of specialized intellection instruction

The final factor we examine for the learned professional exemption is whether the employee's advanced knowledge was acquired by a prolonged course of specialized intellection

6

instruction. To fit the learned professional exemption, an employee's advanced knowledge must come as a result of academic training specifically geared toward entrance into the profession. "The best prima facie evidence that an employee meets this requirement is possession of the appropriate academic degree." 29 C.F.R. § 541.301(d). Balyasnikova acknowledges that she has obtained a masters degree in animal and human physiology and a PhD in cell biology. Both are, without question, indicative of specialized training for her profession. Balyasnikova clearly has the appropriate academic degrees for her profession and her advanced knowledge was undoubtedly acquired by a prolonged course of specialized intellectual instruction.

## **CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss Count III of plaintiff's amended complaint [19] is granted.

It is so ordered.

_____
Wayne R. Andersen
District Judge

Date: September 7, 2007